THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| DONNA MAY, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action Number |
| | ) 4:18-cv-00269-AKK |
| NANCY A. BERRYHILL, | ) |
| Commissioner, SSA, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Donna May brings this action pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Administrative Law Judge's denial of disability insurance benefits, which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons explained below, the court affirms the decision.

### I. Procedural History

May worked previously as a sales representative, telephone solicitor, and waitress until she stopped working in 2012 due to her alleged disability. R. 22, 56, 59, 81, 150. May filed her application for disabled widow's benefits on May 26, 2015 asserting that she suffered from a disability beginning on June 1, 2013, later

amended to April 26, 2014, due to scoliosis, stenosis, arthritis, bulging disk, lower back problems, and hip problems. R. 75, 144, 149. After the SSA denied her application, May requested a formal hearing before an ALJ. R. 96, 106. Ultimately, the ALJ denied May's request for disabled widow's benefits. Doc. 6-3 at 24. The Appeals Council affirmed, rendering the ALJ's decision the final decision of the Commissioner. R. 1. Having exhausted her administrative remedies, May filed this action pursuant to 42 U.S.C. § 405(g). Doc. 8.

## II. Standard of Review

First, federal district courts review the SSA's findings of fact under the "substantial evidence" standard of review. 42 U.S.C. §§ 405(g), 1383(c); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings, even if the evidence preponderates against the Commissioner. *Id.*

Credibility determinations are the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). However, "[t]he testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary," and the failure of the Secretary "to specify what weight is given to a treating physician's opinion and any reason for giving it no weight" constitutes reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Courts have found good cause to discount a treating physician's report when it is "not accompanied by objective medical evidence, . . . wholly conclusory," or "inconsistent with [the physician's] own medical records." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). In contrast to the opinion of a treating physician, "the opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).

Second, federal courts review the SSA's conclusions of law de novo, *see Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987), and "[f]ailure to apply the correct legal standards is grounds not for remand but, for reversal." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). No presumption attaches to either the ALJ's choice of legal standard or to the ALJ's application of the correct legal standard to the facts. *Id.*

Finally, reviewing courts have the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (emphasis added).

### III. Statutory and Regulatory Framework

To qualify for benefits as a disabled widow under the Regulations of the Social Security Act, the claimant must meet the definition of "disabled," and must establish that she is at least 50 years of age and the widow of a wage earner who died fully insured. *Sullivan v. Weinberger,* 493 F.2d 855, 857 (5th Cir. 1974) (citations omitted). The prescribed period of eligibility to receive benefits as a disabled widow under the Social Security Act is seven years from the month of the insured wage earner's death. *Id*. *Hill v. Berryhill,* No. 5:16-CV-597-VEH, 2017 WL 3315364, at *3 (N.D. Ala. Aug. 3, 2017).

An individual applying for DIB bears the burden of proving that she is disabled. *Moore*, 405 F.3d at 1211. To qualify, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520. Specifically, the Commissioner must determine, in sequence:

(1) whether the claimant is doing substantial gainful activity;
(2) whether the claimant has a severe impairment;
(3) whether the impairment meets or is medically equivalent to one listed by the Secretary;
(4) whether the claimant is unable to perform his or her past work; and
(5) whether the claimant is unable to perform any work in the national economy, based on his residual functional capacity.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work, the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

In light of May's application for disabled widow's benefits, the ALJ initially found that May was the unmarried widow of a deceased insured worker and has attained the age of 50 as set forth in Section 202(e) of the Social Security Act. R.

12. The ALJ also determined that the prescribed period for widow's benefits ended on October 31, 2015, after the alleged onset date. *Id.* Turning to the five-step analysis for DIB claims, *see McDaniel*, 800 F.2d at 1030, the ALJ found that May satisfied step one because she had not engaged in substantial gainful activity since the alleged onset date. *Id.* At step two, the ALJ found that May has "severe impairments" caused by degenerative disc and joint disease with headache and scoliosis. *Id.* (citing 20 C.F.R. § 404.1520(c)). However, the ALJ found that May's chronic hip pain was not a "severe impairment for any twelve consecutive months" because the examination findings did not "document significant functional limitations secondary to [May]'s hip bursitis or a chronic need for significant medical care." R. 13. The ALJ also found that May's depression was not a "severe impairment" because medical opinions indicated that she failed to meet the Paragraph B criteria, she did not have significant mental functional limitations, the condition only needed conservative treatment, and May had no recurring serious decompensations. *Id.* At step three, the ALJ concluded that May's degenerative disc and joint disease and scoliosis did not meet the severity or medically equal the severity of one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04 for disorders of the spine. R. 15. Next, the ALJ determined May's residual functional capacity ("RFC") and found that May can "perform sedentary work" with limitations on lifting, reaching, climbing, crawling, extreme temperatures,

exposure to chemicals, and working at unprotected heights. R. 15-22. (citing 20 C.F.R. §§ 404.1529 and 1527). Based on the RFC, and relying on the testimony of a vocational expert ("VE"), at step four, the ALJ found that May could return to her past relevant work as a telephone solicitor. R. 22. In light of this finding, the ALJ was not required to proceed to step five where the burden "shift[s] to the Secretary to show other work the claimant can do." *Foote,* 67 F.3d at 1559 (citation omitted). Therefore, the ALJ concluded that May was not disabled from the alleged onset date through the date of his decision. R. 23.

## V. Analysis

Although May testified about spine pain, associated headaches, arm and hand numbness, and depression, R. 52-59, she challenges only the ALJ's finding about her pain testimony regarding chronic back pain and headaches. Doc. 8 at 6. More specifically, based on May's contention that the ALJ failed to articulate reasons to discredit her subjective pain testimony, May asserts that the ALJ made an improper finding, mischaracterized her longitudinal treatment history, and therefore "has accepted [May's] testimony as true. " *Id.* at 5. (citing *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987)). For the reasons discussed below, the ALJ's decision is due to be affirmed.

To establish a disability via testimony about symptoms, May must provide "(1) evidence of an underlying medical condition; and (2) either (a) objective

medical evidence confirming the severity of the alleged [symptom]; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed [symptom]." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). In assessing May's symptoms, the ALJ must consider: "the objective medical evidence; [May's] daily activities; the location, duration, frequency, and intensity of [May's] symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to relieve the symptoms; treatment, other than medication, for the symptoms; any other measure used to relieve the symptoms; and any other factors concerning functional limitations and restrictions due to the symptoms." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 603–04 (11th Cir. 2017) (citing § 404.1529(c)(3)). Although explicit findings as to credibility are not required, "the implication must be obvious to the reviewing court.'" *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1562). Thus, an ALJ must offer a "clearly articulated credibility finding with substantial supporting evidence in the record," *MacGregor,* 786 F.2d at 1054. Accordingly, "[t]he question is not . . . whether the ALJ could have reasonably credited [May's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

## A. Whether the ALJ Properly Discredited May's Subjective Complaints of Spine Pain

May's primary contention of alleged error centers on her argument that the ALJ failed to properly discredit May's testimony. The record belies May's contention.

### 1. The ALJ's Consideration of the Objective Medical Record

The ALJ found May's complaints of spine pain – which May alleged were severe enough to prevent her from working as a telephone solicitor – were not credible because "the objective findings in [the] case fail[ed] to provide strong support for [May's] allegations of disabling symptoms and limitations." Doc. 6-3 at 17. In reaching this conclusion, the ALJ stated explicitly that he considered the chronological medical "evidence in the record to determine if [May's] symptoms limit [her] ability to do work-related activities." Doc. 6-3 at 16. To support her contention of alleged error, May primarily relies on her diagnosis of degenerate disc and/or joint disease of thoracic and cervical spine, R. 19, as well as her subjective complaints that she relayed to doctors during medical visits, doc. 8 at 9. May's contention of alleged error are unavailing because the ALJ may discredit subjective complaints of pain if the objective medical record fails to "confirm[ ] the severity of the alleged pain." *Wilson*, 284 F.3d at 1225.

The ALJ did so here and pointed to specific entries in the medical record that undermine May's contentions. For example, the ALJ noted that although May

complained of back and neck pain in January 2015 at Springville Family Health Care, an MRI two months later revealed "mild thoracic kyphosis with a small right paracentral disc herniation."  Doc. 6-3 at 17 (citing MRI results reviewed by Dr. William Gallman and Joel Mixon showing that the "thoracic kyphosis is preserved," "vertebral body height and alignment is well maintained," "prevertebral and paraspinal soft tissues are unremarkable," "no evidence for compression fracture at any level," "no neural compromise is suspected," and "minimal loss of interverbral disk space height involving the mid thoracic level," R. 265).  The ALJ pointed out also that at a visit later that month, May told Dr. William Burkhalter at Lemak Sports Medicine Clinic that her "neck and back pain" felt like "burning, stabbing, and pins/needles", but that Dr. Burkhalter's objective examination revealed that there "was full flexion in the thoracic spine" and "full motion in side bending and lateral rotation" despite the pain.  Doc. 6-3 at 17 (citing R. 289). Next the ALJ noted that May returned to Lemak Sports in April 2015, during which an exam revealed "limited back flexion with some tenderness" and "negative impingement signs bilaterally."  Doc. 6-3 at 18 (citing R. 274). Lastly, the ALJ pointed out that May underwent an MRI of her cervical spine the following month, and that according to Drs. Brannon Queen and Bibb Allen Jr., the MRI revealed normal findings: "normal cervical lordosis is preserved," "vertebral body height and alignment are well maintained," "cord signal is normal

throughout," and "no epidural mass or fluid collection," Doc. 6-3 at 18 (citing R. 297).

It is evident from the record that the ALJ properly cited to substantial evidence to discredit May's testimony about the severity of her back pain. Therefore, the ALJ's decision is due to be affirmed. *Lowery v. Soc. Sec. Admin., Comm'r*, 729 F. App'x 801 (11th Cir. 2018) (affirming the ALJ who found "that limitations to which claimant testified were far in excess of those which reasonably would be expected from the objective clinical findings and were not consistent with all of the other evidence of record").

### 2. *The ALJ's Consideration of May's Treatment*

May also challenges the ALJ's evaluation of the treatment May received.[1] First, May argues that the ALJ erred by failing to consider that she "did not have any insurance to pay for any treatments that might alleviate her pain." Doc. 8 at 11. May testified at the hearing that she had no insurance and that she has been "struggling to get medical care." R. 53. Contrary to May's contention, the ALJ acknowledged this point, noting May's limited funds to obtain the recommended conservative treatment. Doc. 6-3 at 22. However, the ALJ found that May's ability to purchase a cigarette pack per day "undercuts claims of inability to obtain desired

---

[1] The alleged contention of error here is related to the ALJ's "obligation to scrupulously and conscientiously probe into the reasons" for a treatment plan and to not make credibility determinations based on a "failure to seek additional medical treatment" without developing the record as to the reasons for that failure. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1269 (11th Cir. 2015) (internal quotations omitted).

medical care." *Id.* This finding is not in error as the ALJ "was entitled also to discredit [May]'s assertion she could not afford additional testing as being inconsistent with her testimony about using discretionary funds to purchase cigarettes . . ." *Moore v. Soc. Sec. Admin., Comm'r,* 649 F. App'x 941, 944 (11th Cir. 2016). *See also Tatum v. Berryhill,* No. 5:17CV262-CJK, 2018 WL 6437074, at *8 (N.D. Fla. Dec. 7, 2018) (noting that claimant's habit of smoking 1.5 packs of cigarettes per day led to the inference that "one could reasonably expect she would have stopped smoking, due to the same economic constraints she now says limited her ability to obtain medical care"). In any event, even if the ALJ erred in considering May's ability to purchase cigarettes to negate May's contentions about her financial inability to obtain medical treatment, the inability to afford treatment for an impairment alone does not render that impairment disabling. *See, e.g., Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003) (finding that "the ALJ's failure to consider [claimant's] ability to afford his seizure medication does not [alone] constitute reversible error" because the ALJ also relied on the entire medical record, including the RFC, work experience, and VE testimony, to discredit the claimant).

Second, May argues correctly that the ALJ did not consider May's documented allergies to medications. Indeed, the record shows that May had "[an] extensive list of allergies to drugs," such as "amoxicillin, Keflex, paxil, penicillin,

Zoloft, Bactrim, contrast Iodine, [and] macrodantin." R. 329-332. However, nothing in the record indicates how these allergies limited May's access to back pain treatment options. Moreover, a majority of May's allergies are to drugs that treat infections or mental health rather than back pain.[2] Therefore, May has failed to show how her drug allergies impacted her purported disabling back pain.

Third, May argues that the ALJ did not consider May's attempts to treat her pain through physical therapy. Specifically, May contends that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources *may* be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." Doc. 8 at 9 (quoting SSR 16–3p) (emphasis added). The ALJ's failure to mention May's physical therapy visits is harmless error because multiple attempts to obtain relief are alone not determinable on whether symptoms are disabling. Indeed, the record shows a conservative physical therapy treatment plan for May that is not consistent with May's contentions of disabling pain. Specifically, Dr. Burkhalter recommended physical therapy for four weeks after an MRI of May's spine indicated that May had "a small thoracic disc bulge." R. 286, 288. Although May missed several

---

[2] The record indicates that May tried and stopped using Meloxicam, which treats arthritis, due to nausea. R. 337. However, the record does not indicate that an allergy to this medication precluded other treatments for back pain.

physical therapy appointments, the records indicate that May made progress during the sessions she attended. R. 235, 236. For example, Physical Therapist Debbie King charted that May should "continue with deep tissue mobilization and Ultrasound hybresis" and May made "progress with posture exercises." R. 238. At another appointment, during which May complained that her hips were in pain, King noted that May "felt better after the last treatment," "tolerated the TB exercises and stretche[d] fairly well," and instructed May to continue with deep tissue mobilizations and ultrasounds. R. 242. During another visit, May told Physical Therapist Ashley Lynch that picking things up and sitting for long periods increased her pain, but that she found relief in lying flat, using heat, and prescription medications. R. 252. Later that month, Lynch recommended that May use a "1/8 inch" sole in her left shoe to even her legs and alleviate pain, R. 254, and gave May a rehabilitative prognosis of "excellent rehab potential to reach and maintain prior level of function." R. 256. Finally, the Discharge Summary indicated that May had back pain scaled 10 out of 10 with activity, but that May's "pain scores ranged from session to session in her thoracic spine," that May "called several weeks ago to add another body part to therapy yet she has not returned to therapy since," and that May "was given final instructions prior to the discharge to do a home exercise program." R. 278. Put simply, the physical therapy entries support the ALJ's finding that May's back ailment did not preclude her from

14

working in a sedentary job as a telephone solicitor. Therefore, any error that the ALJ made in failing to discuss May's physical therapy, or her drug allergies, is harmless. *Adams v. Astrue,* No. 8:11-CV-2312-T-TGW, 2013 WL 153721, at *9 (M.D. Fla. Jan. 15, 2013), *aff'd sub nom. Adams v. Comm'r of Soc. Sec.*, 542 F. App'x 854 (11th Cir. 2013) (finding that claimant has not shown that his pursuit of treatment during the insured period . . . compelled the law judge to fully credit the plaintiff's allegations of disability . . . [and that claimant's] continued treatment, which the [claimant] states has helped him, undermines allegations of total disability.").

To close, while the ALJ may have failed to discuss May's physical therapy or her drug allergies, the ALJ considered the pertinent medical record fully. This included evidence that May received interlaiminar steroid injections in her back and marcaine injections in her hip and was diagnosed with thoracic spondylosis, thoracic degenerative disc disease, and upper back pain in May 2015. Doc. 6-3 at 18. Ultimately, however, the ALJ discredited May's subjective complaints of pain. In doing so, the ALJ gave substantial weight to Dr. Leland Eaton, whose opinion the ALJ stated was "well supported by his own clinical examinations and testing . . . and is generally consistent with the record as a whole." Doc. 6-3 at 22. Dr. Eaton opined during a July 2015 consultative examination that despite May's complaints of back and neck pain, "[May] is able to drive, prepare some meals, and do

laundry" with some assistance from her daughter,[3] "grip and hold objects securely to the palm by the last three digits," and "grasp and manipulate both large and small objects with the first three digits." R. 313-314. Dr. Eaton found that May's "overall diagnosis was cervical thoracic radiculopathy" and, relevant to the ALJ's finding that May can still work as a telephone operator, doc. 6-3 at 23, Dr. Eaton issued a "functional assessment and medical source statement noting that her maximum standing and walking capacity is up to six hours with no limitations on sitting capacity, handling, finger, and feeling." R. 315. The ALJ also gave significant weight to Dr. Celtin Robertson's objective examination findings were "similar" or "identical" to Dr. Eaton's. Doc. 6-3 at 23 (citing R. 197-201 where Dr. Robertson noted that May has no limitations on her maximum standing, walking, lifting, postural, and fine and gross manipulative activities). Based on these two medical opinions and the other entries in May's medical record, the ALJ discredited May's "allegations of totally disabling symptoms," finding that they were not consistent with the medical opinions in the record and that there were no "treatment records of restrictions placed on [May] by the treating doctor." Doc. 6-3 at 21.

---

[3] Although May indicates that her daughter assists her in daily activities, her Self-Functioning Report indicates that is independently able "to take care of pets or other animals" by feeding and giving them water, spend time with others on the phone on a daily basis and in person at least once a week, and prepare sandwiches, frozen dinners, and dinner on a weekly basis. R. 167, 168, 170. *See* 20 C.F.R. § 416.929(c)(3)(i) ("Factors relevant to [the claimant's] symptoms, such as pain, which [the ALJ] will consider include . . . [the claimant's] daily activities").

16

In light of the medical record failing to support May's testimony on the severity of her alleged pain, the ALJ properly discredited her subjective complaints of back pain. *See Chatham v. Comm'r of Soc. Sec.*, No. 18-11708, 2019 WL 1758438 (11th Cir. Apr. 18, 2019) (finding that the ALJ "adequately articulated reasons for discrediting claimant's allegations of disabling pain" which purportedly prevented her ability to work "as telephone-information clerk [for] more than [a] three-hour workday" because the claimant "could sit for five hours and medical evidence [indicated] that she had normal range of motion of shoulders, elbows, and wrists with full strength as well as gait within normal limits."). Therefore, the ALJ did not err when he found that May "is capable of returning to past relevant work as a telephone solicitor," which "does not require the performance of work-related activities precluded by [May's] residual functional capacity." Doc. 6-3 at 23.

### B. Whether the ALJ Properly Discredited May's Subjective Complaints of Chronic Headaches

May contends also that the ALJ failed to properly consider the longitudinal treatment history for her headaches related to back and hip pain. Doc. 8 at 9. According to May, she experienced headaches three times per week initially, R. 329, and later on a daily basis, R. 343. The ALJ discredited these complaints because "the medical evidence of record does not support a finding that the frequency or intensity of the headaches would preclude the performance of sustained work activity." Doc. 6-3 at 20. The ALJ also concluded that the

"examination findings" indicated that "[May] was not in acute distress," the "imaging does not demonstrate the type of nerve involvement or advanced degeneration that would likely cause debilitating, chronic headaches," and the "type of prescribed treatment options for the alleged headaches are also not indicative of a debilitating condition." *Id.* As for May's report in October 2016 that she lacked insurance to pay for treatment for her daily headaches, R. 343, the ALJ discredited this based on her ability to pay for cigarettes. *See* Section A.2, *supra*.

The substantial evidence supports the ALJ's decision. Noticeably absent from the record is a medical opinion that May suffers from headaches that preclude her from "engag[ing] in any substantial gainful activity." *See, e.g.,* 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(I)(A). In fact, only two entries in the record mention May's complaints of headaches. During an August 2016 visit at M. Power Ministries, Dr. Roger Carlisle, a one-time examining physician, noted that May "complains of headaches," but made no further observations or diagnosis. R. 329. The second entry is from Catholic Family Services, where a staff member wrote down May's reason for her visit and explanation of current problems, which included May's report of daily headaches. R. 343. In contrast to these two reports, an MRI of May's thoracic spine revealed that "no neural compromise is suspected," R. 265, which as the ALJ concluded, "does not demonstrate the type of

nerve involvement or advanced degeneration that would likely cause debilitating, chronic headaches." Doc. 6-3 at 20. Finally, in response to the ALJ's inquiry regarding if May had discussed using injections to treat her headaches, May mentioned that Cooper Green Hospital attempted to add her into its treatment program, but that discussion never progressed further. R. 54. In other words, as the ALJ noted, there is nothing in the record to support "a finding that the frequency or intensity of the headaches would preclude performance of sustained work activity." Doc. 6-3 at 20. Therefore, the ALJ did not err in denying May benefits based on the medical record.

## VI. Conclusion

Despite the ALJ's errors in developing the record as to May's attempts to treat her pain through physical therapy, the record supports the ALJ's determination that May is capable of returning to her prior work as a phone solicitor and that May has failed to meet her burden to establish a disability. *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act "[u]nquestionably" rests with the claimant.") (citing 20 C.F.R. § 404.1512(a)); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."). Accordingly, the court

concludes that the ALJ's determination is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching his decision. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 8th day of May, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE